

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Mark Pierson, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 04 C 939 |
| Rod. R. Blagojevich and Roger Walker, Jr., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' renewed motion for judgment on the pleadings. For the reasons stated below, we grant in part and deny in part the motion for judgment on the pleadings.

## BACKGROUND

Plaintiff Mark Pierson ("Pierson") alleges that he was employed as a warden at Pickneyville Correctional Center, which is a state penal institution. Pierson alleges that his employment was terminated in September of 2003. According to Pierson, Defendants terminated his employment because of Pierson's involvement with the Republican party and because the Governor of Illinois ("Governor") and the

Director of the Illinois Department of Corrections ("IDOC") did not consider Pierson "to be a political ally of the Democratic administration." (FA Par. 14). Pierson also claims that he spoke out on issues of public concern such as the unfilled vacancies at the IDOC. Pierson claims that his employment was also terminated in retaliation for his public statements about the vacancies. Pierson also alleges that the Governor spoke to Pierson and told Pierson that he was not going to fire all employees that were hired by the prior Republican administration and that such employees would be able to continue their employment as long as they performed their jobs satisfactorily. Pierson includes in his amended complaint a claim alleging violations of his First Amendment rights under 42 U.S.C. § 1983 ("Section 1983") (Count I), a Section 1983 retaliation claim (Count II), and a Section 1983 due process claim (Count III).

## LEGAL STANDARD

A party is permitted under Federal Rule of Civil Procedure 12(c) to move for judgment on the pleadings after the parties have filed the complaint and the answer. Fed. R. Civ. P. 12(c); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir.1998). The courts apply the Rule 12(b) motion to dismiss standard for Rule 12(c) motions and thus the court may "grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that

would support his claim for relief.'" *Id.* (quoting *Crags, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993)). The court, in ruling on a motion for judgment on the pleadings, must "accept all well-pleaded allegations in the complaint as true," *Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir. 2000), and "view the facts in the complaint in the light most favorable to the nonmoving party. . . ." *Northern Indiana Gun & Outdoor Shows, Inc.,* 163 F.3d at 452(quoting *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995)). The main difference between a Rule 12(b) motion and a Rule 12(c) motion is that a Rule 12(b) motion may be filed before the answer to the complaint is filed, whereas, a Rule 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial." *Id.* n.3.

A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone. *Id.* at 452. The pleadings include the complaint, the answer, and any written instruments attached as exhibits, such as affidavits, letters, contracts, and loan documentation. *Id.* at 452-53. In ruling on a motion for judgment on the pleadings a "district court may take into consideration documents incorporated by reference to the pleadings . . . [and] may also take judicial notice of matters of public record." *U.S. v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991). If the court considers matters outside the pleadings, the court should convert the motion for judgment on the pleadings into a motion for summary judgment. *Northern*

*Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 453 n.5.

## DISCUSSION

I. First Amendment Discrimination Claim (Count I)

Defendants argue that they are entitled to judgment on the pleadings on the First Amendment discrimination claim because an appropriate consideration for the warden position held by Pierson was his political affiliation. Generally, a public employee cannot be subjected to "adverse job actions because of [his] political beliefs." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004). A public employer may take an adverse action against an employee because of his political affiliation if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005)(quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)). The Seventh Circuit has found that a public employee's political affiliation is a legitimate consideration in regards to a public position if the "position involves confidential and policymaking responsibilities." *Id.* at 354-55 (defining a policymaking position as a position in which the employee is "authoriz[ed], either directly or indirectly," to provide "meaningful input into government decisionmaking on issues where there is room for principled

disagreement on goals or their implementation.").

The Seventh Circuit recently entered a decision in *Kiddy-Brown v. Blagojevich*, 408 F.3d 346 (7th Cir. 2005), reviewing a district court's ruling on the defendant's motion for judgment on the pleadings which is similar to the instant action. *Id.* at 349-50. In *Kiddy-Brown*, the plaintiff was employed as a warden for the IDOC, similarly to Pierson who was also employed as a warden. *Id.* The plaintiff in *Kiddy-Brown* likewise brought suit alleging that she was fired because of her political affiliation. *Id.* The court in *Kiddy-Brown* evaluated whether or not party affiliation was an appropriate requirement for the plaintiff's warden position and concluded that, since all allegations had to be viewed in favor of the plaintiff at the pleadings stage, that there was not sufficient evidence "to conclude that the warden position involved the kind of policymaking duties that would make political affiliation an appropriate requirement for the position." *Id.* at 356.

Defendants argue that the warden position occupied by Pierson required Pierson to engage in policymaking, to implement policy, and to act as a spokesperson. Defendants argue that Pierson has pled himself out of court by admitting in his own affidavit to facts that show that he engaged in the above activities. However, no such admissions were made in the affidavit. Merely because Pierson acknowledged that he did activities such as training and directing staff and planned and directed operations and programs, does not show that he

engaged in the type of activities that would make Pierson's political affiliation an appropriate consideration for his warden position.

Defendants also rely heavily upon the position statement for the warden position which Defendants attached to their amended answer. As the Court in *Kiddy-Brown* noted in the beginning of its analysis on this issue, when ruling on a motion for judgment on the pleadings, we "must view all allegations in the pleadings in the light most favorable to [the non-movant.]" *Id.* at 355. In *Kiddy-Brown*, as in this case, the Court was presented with a position statement for the plaintiff's warden position and the court concluded that the position statement was not sufficient evidence to show that the warden position involved the type of policymaking duties that would render the plaintiff's political affiliation a valid consideration for her position. *Id.* at 353-56. In the instant action, the position statement presented by Defendants is evidence of what duties and activities were associated with the warden position, but it is not sufficiently conclusive evidence on that point. Pierson contests Defendants' assertion that the warden position involved policy making or implementing activities or involved him acting as a spokesperson. Defendants also argue that, unlike in *Kiddy-Brown*, Pierson has not disputed the authenticity of the position statement. However, this distinction, even if true, is not sufficient to distinguish *Kiddy-Brown* from the instant action to such an extent as to render the holding of *Kiddy-Brown* inapplicable to the instant action.

Defendants also argue that Pierson improperly focuses on the duties that he actually performed, whereas the focus should be on the inherent duties of the warden position. (Reply 3). Defendants are correct that the focus is properly upon the duties inherent in the warden position. *See Tomczak v. City of Chicago*, 765 F.2d 633, 640-41 (7th Cir. 1985)(stating that "*Elrod* and *Branti* require examination of the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office."). However, Defendants incorrectly assert that Pierson's arguments are focused upon only the duties that Pierson actually performed. For example, Pierson argues that his "duties and responsibilities were well defined and of limited scope." (Ans. 2). Pierson also specifies what the "duties and responsibilities" that "were inherent in the position of Warden at Pickneyville Correctional Center." (Ans. 2). Thus, Defendants are incorrect when they assert that Pierson failed to address the duties that are inherent to the warden position. Therefore, we deny Defendants' motion for judgment on the pleadings on the First Amendment claim (Count I).

## II. Retaliation Claim (Count II)

Defendants argue that they are entitled to judgment on the pleadings on the retaliation claim because Pierson publically criticized his superiors. A governmental entity is prohibited from "retaliat[ing] against its employees for engaging in

constitutionally protected speech." *Kiddy-Brown*, 408 F.3d at 357 (quoting *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 970 (7th Cir.2001)). For a First Amendment retaliation claim, a plaintiff is required to establish: "(1) that []he engaged in constitutionally-protected speech and (2) that h[is] speech was 'a substantial or motivating factor in the defendants' challenged actions.'" *Id.* (quoting in part *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. 37*, 260 F.3d 602, 618 (7th Cir.2001)). The governmental entity has the "burden of justifying the employee's discharge." *Id.* The Seventh Circuit has provided further guidance in regards to a First Amendment retaliation claim indicating that, in general, "if a public employee's speech was on a matter of public concern, '[the speech] is protected if h[is] interest in that expression outweighs the State's interest in promoting the efficiency of its public services.'" *Id.* (quoting in part *Caruso v. De Luca*, 81 F.3d 666, 670 (7th Cir.1996)). The Seventh Circuit has also explained that an employee of a public entity, "does not shed [his] First Amendment rights at the steps of the government building," but on the other hand, the public employee does not enjoy an absolute right to speech. *Id.* at 357-58 (quoting in part *Vargas-Harrison*, 272 F.3d at 970)(quoting *Pickering v. Board of Education*, 391 U.S. 563 (1968) for the proposition that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."). The court, in determining

whether there has been unlawful retaliation in violation of the First Amendment must balance the interests of: 1) "the [employee], as a citizen, in commenting on matters of public concern," and 2) "the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (noting that "in cases involving the dismissal of an employee in a policymaking position, 'there is no need for a fact-specific analysis of the circumstances of each case' mandated by *Pickering*" and that "the First Amendment does not prohibit the discharge of a policy-making employee when that individual has engaged in speech on a matter of public concern in a manner that is critical of superiors or their stated policies."). *Id.*

In the instant action, Pierson alleges in his amended complaint that "he spoke out on matters of public concern" such as the need to fill vacancies in the IDOC with qualified personnel. (A Compl. Par. 45-46). Pierson also alleges that his statements were made out of concern for "the safety of the IDOC facilities." (A Compl. Par. 48). The Court in *Kiddy-Brown* was presented with similar allegations. In *Kiddy-Brown,* the plaintiff claimed that she spoke out on matters of public concern in order to act as a responsible citizen. *Id.* at 358. The Court in *Kiddy-Brown* found that based on the allegations by the plaintiff, that at the "early stage of the proceedings," the plaintiff's interest outweighed any state interest, and her speech was a substantial factor in her termination. *Id.* at 359. We likewise agree in the instant action that, accepting for the purposes of the instant motion that Pierson's allegations are true,

the interest alleged by Pierson outweighs any state interest and that his speech was a motivating factor in his termination. Therefore, we deny Defendants' motion for judgment on the pleadings on the retaliation claim. Although, we are denying Defendants' motion, we shall provide the same admonition that the Court in *Kiddy-Brown* provided on this issue, and note that when we are "presented with a better-developed record," we may find that Pierson's "factual allegations do not portray accurately h[is] situation." *Id.*

III. Due Process Claim (Count III)

Defendants argue that they are entitled to judgment on the pleadings on the due process claim. In order for a plaintiff to show a violation of his due process rights, the plaintiff must establish: "(1) that the claimed interest is a protected property or liberty interest under the fourteenth amendment; (2) that 'the alleged loss . . . amounted to a deprivation'; and (3) that the deprivation was without due process of law." *Polenz v. Parrott*, 883 F.2d 551, 555 (7thy Cir.1989). Defendants argue that Pierson does not have a protected property interest in continued employment.

Defendants argue that the Governor lacked authority to make any employment decisions for the IDOC and that the Governor's assurances therefore did not create any protectable property interest in employment. Pierson alleges in his complaint that the Governor made oral representations to himself and other IDOC employees

indicating that the employees would not be fired merely because they had been hired during the Republican administration. The Court in *Kiddy-Brown* was presented with the same argument regarding the Governor's lack of authority and the Court concluded that the plaintiff had not shown that the Governor had authority to bind the state to uphold the Governor's promises of future employment. *Kiddy-Brown*, 408 F.3d at 363. Likewise, in the instant action, Pierson has failed to point to sufficient materials in the pleading that would indicate that the Governor had authority to make such a promise. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1334 (7th Cir. 1989)(stating that "[i]t is now firmly established that the 'mutually explicit understandings' that constitute property interests under the holding of *Perry* cannot be based on the representations of government officials who are not authorized to make such representations."). In addition, even if the Governor had authority to make a promise of future employment to Pierson, and even when viewing the pleadings in the light most favorable to Pierson, there is no indication that an oral employment contract for permanent employment was formed by the Governor's statements.

Under Illinois law, the employment of an individual is presumed to be at will employment and thus, "[a]n employee bears the burden of overcoming the presumption of 'at will' employment by showing that the parties contracted otherwise." *Kiddy-Brown*, 408 F.3d at 363. If an employment contract is based

upon alleged oral statements by an employer, "the plaintiff must establish that the offer was 'clear and definite' and supported by adequate consideration." *Id.* (stating that "[u]nder Illinois law, an offer is clear and definite as long as 'an employee would reasonably believe that an offer has been made.'"). As the court noted in *Kiddy-Brown*, "Illinois courts have held that, when employers tell employees that they will 'always have a job' or that they will 'never have to anticipate a layoff' or that they were being offered a 'permanent position,' such statements are not sufficiently clear and definite to constitute an offer of permanent employment." *Id.* Rather, such statements have been deemed by the Illinois courts as "'optimistic expressions about the future' and 'informal expressions of goodwill and hope that naturally occur' between employer and employee." *Id.*

The pleadings do not show that the Governor's alleged statements were sufficiently "clear and definite to create a protectable property interest in future employment." *Id.* Pierson merely alleges that the Governor stated in a general fashion that he "was not going to purge state [sic] government of different men and women who were hired during Republican [sic] administrations" and that the Governor "promised that if men and women working for the State of Illinois were satisfactorily performing necessary jobs, they would not be terminated by his administration." (A Compl. Par. 69). Such statements are merely general promises and could not be reasonably interpreted to mean that any specific employee will be

guaranteed future employment with the IDOC. There is no indication in the pleadings that the Governor made a statement, specifically regarding Pierson, which clearly indicated that Pierson would continue to be employed by the IDOC. In *Kiddy-Brown*, the plaintiff alleged that the Governor made similar statements and the court held that the statements were not "sufficiently clear and definite to establish a definite property interest in continued employment." *Id.* As the Court found in *Kiddy-Brown*, the Governor's statements referred to in the instant action "are 'nothing more than optimistic expressions about the future" and "constituted expressions of goodwill and hope." *Id.* at 365. Therefore, we grant Defendants' motion for judgment on the pleadings on the due process claim (Count III).

IV. Qualified Immunity

Defendants also move for judgment on the pleadings on all Counts to the extent that they include requests for damages, based upon Defendants' assertion of qualified immunity. Government officials that perform "discretionary functions enjoy a qualified immunity from suit." *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7th Cir. 2005). Qualified immunity prevents the recovery of damages in a civil action for claims brought against public officials, if the officials' "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* In order to determine whether qualified immunity is applicable prior to trial, a court

must determine whether: 1) "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right. . . ." and 2) "the right was clearly established. . . .," meaning that "it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id.* (stating that "[a] right is clearly established when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right'" and that "[t]he action's unlawfulness must be 'apparent' from pre-existing law"). A court should, if possible "determine early in the proceedings whether qualified immunity will apply." *Id.* at n.7; *see also Delgado v. Jones*, 282 F.3d 511, 516 n.1 (7th Cir. 2002)(explaining that "many qualified immunity determinations are made in the context of summary judgment, where materials outside the pleadings may be considered.").

For the reasons stated above, in regards to the due process claim, the pleadings do not indicate that there was a constitutional violation and therefore, we need not proceed further with the qualified immunity analysis. *See id. Leaf*, 400 F.3d at 1079-80 (stating that "[if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). In regards to the First Amendment discrimination claim and the retaliation claim, based upon a review of the pleadings in the light most favorable to Pierson, we cannot find that no constitutional right was

violated. In regards to whether the rights in question were clearly established, Pierson argues that Defendants terminated his employment because of his political affiliation and that the law is clear that under certain situations such conduct is a violation of an employee's constitutional rights. Although, Defendants tout the position statement for the warden position as a reason why Defendants would deem Pierson's position a policy-making position, there is no indication in the pleadings that Defendants were aware of the position statement. Also, as is explained above, the position statement, is insufficient in and of itself to establish the position's inherent duties and likewise is insufficient to show, at this stage of the proceedings, that Defendants should not have known that they were violating a clearly established constitutional right of Pierson. As the court noted in *Kiddy-Brown* "[i]t has long been clear that the First Amendment forbids politically-motivated patronage dismissals of certain employees." *Kiddy-Brown*, 408 F.3d at 356. Also, as the Court determined in *Kiddy-Brown,* we conclude that the truth of the allegations in the instant action "must be resolved . . . on a more complete record" and "once the record is developed" we recognize that we may be asked by Defendants "to revisit the issue of qualified immunity." *Id.* at 357. Therefore, based upon the pleadings at this initial stage of the proceedings, we deny Defendants' motion for judgment on the pleadings on the requests for damages for the First Amendment discrimination claim and the retaliation claim.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion for judgment on the pleadings on the First Amendment discrimination claim (Count I) and the retaliation claim (Count II). We grant the motion for judgment on the pleadings on the due process claim (Count III). We also deny the motion for judgment on the pleadings on the requests for damages in regards to the First Amendment discrimination claim (Count I) and the retaliation claim (Count II) and grant the motion for judgment on the pleadings on the requests for damages in regards to due process claim (Count III).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 24, 2005